* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission modifies in part and affirms in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Both plaintiff and defendants are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employer-employee relationship existed between the parties, and defendant-employer was insured for workers' compensation benefits.
5. The date of the injury that is the subject of this claim is September 27, 2000.
6. Plaintiff is permanently and totally disabled.
7. The issues before the Full Commission involve provision of attendant care, an all-terrain vehicle, a generator, and an in-home needs assessment; and payment for the life care plan. Following the Deputy Commissioner's Opinion and Award, defendants agreed to provide plaintiff with prosthetic care by specialist Jon David Wilson and, therefore, that issue is not before the Full Commission.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed as a Maintenance Technician for defendant-employer.
2. On September 27, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment when an incinerator's loader ram crushed him. Plaintiff sustained a crushing injury to his pelvis, resulting in bilateral amputations of his legs at the hip.
3. Plaintiff was airlifted to Carolinas Medical Center, where he was documented to have agonal respirations, was not following commands, and was pale and diaphoretic. Plaintiff was noted to have deformity of his pelvis with open perineal wound, and an ultrasound revealed hemoperitoneum. X-rays showed an open pelvic fracture. His penis was macerated and sustained a crush injury. There were no pulses in the lower extremities. Plaintiff also suffered a bladder rupture and colorectal injury. He sustained necrotic and degloving injury to his back and anterior pelvis.
4. On September 27, 2000, plaintiff subsequently underwent multiple surgeries, including application of an external fixator to the pelvis and bilateral above-knee amputations, as well as exploratory laparotomy, colonoscopy and suprapubic catheter placement. On September 28 and 29, October 1, 5, 11, and 18, and November 15, 2000, plaintiff endured multiple irrigation and debridement procedures to his massive bilateral above-knee amputation wounds and open pelvic wounds, skin, and subcutaneous tissue and necrotic muscle, including the entire length of the pelvis as well as some complex areas into the scrotum and penis. Additionally, on October 11, 2000, a bronchoscopy and tracheostomy were performed. On November 8 and 13, 2000, plaintiff underwent drainage of a pelvic abscess. On December 7, 2000, the external fixator was removed and plaintiff was examined under C-arm.
5. During his hospital care, plaintiff required a urostomy and colostomy formation for urination and defecation. He also lost his left testes due to the crushing injury. Plaintiff had multiple blood transfusions on September 28, 2000 for ongoing thrombocytopenia. On October 2, 2000, plaintiff was diagnosed with pneumonia and remained intubated in the intensive care unit until October 17, 2000. On October 4, 2000, a CT of plaintiff's head showed no skull fracture, but an extensive scalp injury to the left side of the skull and occiput area. X-rays of the left elbow on October 9, 2000 revealed a nondisplaced fracture of the coronoid process. On October 25, 2000, an opthalmological evaluation for blurred vision in plaintiff's right eye revealed subconjunctive nerve, traumatic optic neuropathy and sixth nerve palsy in the right eye. On November 2, 2000, plaintiff was noted to have an infected abscess on his backside, as well as a urinary tract infection. On December 11, 2000, plaintiff was found to be stable and was transferred to Charlotte Institute of Rehabilitation for inpatient treatment.
6. Plaintiff was admitted to the Charlotte Institute of Rehabilitation with multiple skin wounds. His injury wounds progressed toward healing during his admission; however, his decubitus ulcer remained somewhat problematic. Plaintiff was discharged on January 11, 2001 and, following his return home, began outpatient treatment at Charlotte Institute of Rehabilitation with Dr. William L. Bockenek.
7. Plaintiff experiences chronic pain and requires home health care. Plaintiff also experiences "phantom pain" involving his thighs, ankles and feet. Plaintiff also states that he experiences depression secondary to his limitations.
8. Dr. Brian O'Malley performed a psychological evaluation of plaintiff and diagnosed him with post-traumatic stress disorder and depression associated with the loss of his lower extremities.
9. In July 2001, plaintiff and his family relocated to West Virginia. On September 18, 2004, plaintiff and his family moved to a handicapped-accessible home.
10. Plaintiff must use a bucket prosthesis to be able to sit upright in his wheel chair.
11. On August 30, 2001, plaintiff underwent evaluation for removal of his colostomy.
12. In February 2002, plaintiff reported an increased difficulty with "phantom pain" and frustration with his physical limitations.
13. On December 12, 2002, the parties notified the Industrial Commission that they had reached an agreement on the issues of accessible transportation, plaintiff's average weekly wage, and attendant care services provided by plaintiff's wife, Joanne Edwards, from January 11, 2001 through August 12, 2002.
14. Plaintiff is unable to engage in the leisure activities he performed prior to his accident, such as hunting and fishing, and is unable to interact with his four children and participate in family events outdoors. At least two of plaintiff's children have experienced depression and anxiety due to plaintiff's injury by accident. On August 25, 2003, Dr. Bockenek prescribed an all-terrain vehicle (ATV) for plaintiff. Dr. Bockenek stated this vehicle would allow plaintiff to engage in relatively normal activities outside of the home. Dr. Bockenek stated that the ATV was necessary to help plaintiff with his depression and psychological well-being.
15. On November 17, 2003, Dr. Bockenek noted that plaintiff's bucket prosthesis was causing sores. His examination revealed two stage II sores, one at each side. Plaintiff was instructed to stay out of the bucket as much as possible. Dr. Bockenek also noted ongoing problems with chronic pain.
16. On December 18, 2003, the parties resolved an accessible housing issue that was pending before the Full Commission. On February 26, 2004, Commissioner Dianne C. Sellers entered an "Order Approving Partial Compromise Settlement Covering the Provision of Accessible Housing."
17. On May 5, 2004, plaintiff underwent evaluation for erectile dysfunction with Culley C. Carson, M.D. at UNC Hospital. Plaintiff was instructed to return for a Doppler ultrasound and hormone profile before discussing alternatives for therapy.
18. On August 2, 2004, Dr. Bockenek documented a stage 2-3 right ischial pressure sore from the bucket prosthesis. He instructed plaintiff to stay off the right ischial area or the sore would not heal and possibly put him at risk for surgery.
19. On February 15, 2005, Dr. Bockenek documented ongoing pain from plaintiff's bucket prosthesis. Plaintiff's bilateral sores were examined in the ischial areas on both the right (2x2 cm) and left (1x1 cm). Dr. Bockenek strongly recommended plaintiff get a new bucket prosthesis and he increased plaintiff's pain medication in the meantime.
20. Defendants have not provided plaintiff with a suitable bucket prosthesis.
21. Plaintiff requires prosthetic care by a prosthetist who is experienced in the manufacture and design of prostheses for high level, bilateral lower extremity amputees. Plaintiff has researched and located a suitable prosthetist, Jon David Wilson, who has considerable experience in the design and manufacture of the type of prosthesis that plaintiff requires.
22. Plaintiff is significantly limited by his injury, due to severe pain and inability to sit up right and ambulate.
23. Plaintiff receives unskilled attendant care from Gentiva Health Services eight hours per day, five days per week. Plaintiff receives skilled nursing care from Gentiva Health Services up to one hour per week. The average hourly rate for attendant care in plaintiff's area is $11.50 per hour and plaintiff requires access to attendant care up to 24 hours per day. There are days that plaintiff is unable to get out of bed due to considerable pain and he cannot predict when he may require assistance. The safest option for plaintiff is to have someone available in his home, as a home health care attendant who does not reside with plaintiff would not be readily available on call should an urgent need arise. During the times that Gentiva is not providing attendant care for plaintiff, plaintiff's wife provides attendant care services. Plaintiff's wife provides attendant care to plaintiff at least four hours per day on the weekdays and at least twelve hours per day on the weekends. In addition, Dr. Bockenek testified that an in-home needs assessment for plaintiff would be helpful in determining the amount of attendant care plaintiff requires.
24. Dr. Bockenek has prescribed an emergency generator for plaintiff, as plaintiff has compromised circulation and compromised skin due to his injuries. Plaintiff is highly susceptible to skin breakdown with exposure to cold temperatures and is also at risk for skin breakdown in as little as half an hour if he cannot change position. Plaintiff spends much of his day in bed and uses an electronically powered air mattress to provide pressure relief to areas where skin breakdown may occur. Should plaintiff's home lose power, his air mattress would deflate and he would be at risk for skin breakdown. Due to the nature of plaintiff's injuries, he does not have the resilience to deal with complications that could arise in an environment without light, heat or equipment. An emergency generator would prevent loss of power in plaintiff's home and decrease plaintiff's risk of further injury.
25. Cynthia Wilhelm, Ph. D., an expert in the fields of rehabilitation psychology and life care planning, assessed plaintiff's multiple needs, including in-home needs such as attendant care, skilled nursing care and other in-home medical services. In addition, Dr. Wilhelm conducted personal interviews and an assessment with plaintiff, his wife and his doctors, and prepared the life care plan in March 2004. However, Dr. Wilhelm did not visit plaintiff in his new handicapped-accessible home in West Virginia. Despite speaking with plaintiff's home healthcare attendants, Dr. Wilhelm did not have current notes documenting what services or activities were provided by Georgia Berry or any other attendant, nor was she able to elaborate on how long it might take an attendant to perform those services. The life care plan makes no recommendations for medical care other than what is already being provided, and it contains no new recommendations regarding plaintiff's life care needs. The plan was prepared at the request of plaintiff's attorney and not at the request of a treating physician, and appears to have been prepared primarily for litigation purposes.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to medical, rehabilitation, and other expenses incurred or to be incurred as a result of the injury by accident for so long as such evaluations, treatments, and examinations may reasonably be required to effect a cure, give relief, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
2. Plaintiff is entitled to specialized prosthetic care with prosthetist Jon David Wilson, who is experienced in bucket type prosthetic devices. N.C. Gen. Stat. §§ 97-2(19); 97-25.
3. Should plaintiff choose to purchase an all terrain vehicle, plaintiff is entitled to have defendants pay for any modifications to the vehicle necessary to accommodate plaintiff's disabilities. N.C. Gen. Stat. §§ 97-2(19); 97-25; Timmons v. N.C. Dept. of Transportation,123 N.C. App. 456, 473 S.E.2d 356 (1996), aff'd, 346 N.C. 173,484 S.E.2d 551 (1997).
4. Plaintiff is entitled to have defendants pay for attendant care provided to him by his wife, Joanne Edwards, in the amount of $11.50 per hour for four hours per day, five days per week, and 12 hours per day on the weekend beginning August 12, 2002 and continuing through the filing date of this Opinion and Award. Thereafter, defendants shall pay for the same level of attendant care whether provided by Mrs. Edwards or an outside individual or agency. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. Plaintiff is entitled to have defendants pay for an emergency generator sufficient to provide light and heat in plaintiff's bedroom and to power plaintiff's inflatable bed, which are medically necessary per doctor's orders. N.C. Gen. Stat. §§ 97-2(19); 97-25.
6. Plaintiff is not entitled to have defendants pay for a Life Care Plan prepared by Dr. Cynthia Wilhelm, as the plan does not currently reflect plaintiff's new housing and there was no supplement once plaintiff's new home was completed. N.C. Gen. Stat. §§ 97-2(19); 97-25.
7. Plaintiff is entitled to an in-home needs assessment in plaintiff's handicapped-accessible home in West Virginia. This needs assessment should be performed in a timely manner after allowing for a reasonable adjustment period for plaintiff's new prosthesis, as recommended by plaintiff's physician. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall provide plaintiff specialized prosthetic care by Jon David Wilson.
2. Should plaintiff choose to purchase an all terrain vehicle, defendants shall pay for any modifications to the vehicle due to plaintiff's injuries.
3. Defendants shall pay compensation at the rate of $11.50 per hour for four hours per weekday, five days per week, and twelve hours per weekend day, for the attendant care provided by plaintiff's wife, Joanne Edwards, beginning August 12, 2002 and continuing through the filing date of this Opinion and Award. Thereafter, defendants shall pay for the same level of attendant care whether provided by Mrs. Edwards or an outside individual or agency.
4. Defendants shall pay for an emergency generator for plaintiff that is sufficient to provide light and heat in his bedroom and to power his inflatable bed, which are medically necessary per doctor's orders.
5. Defendants' motion for an in-home needs assessment is GRANTED. Defendants shall provide plaintiff an in-home needs assessment in plaintiff's home in West Virginia after allowing for a reasonable adjustment period recommended by plaintiff's physician. If plaintiff and defendants cannot agree upon an expert to perform the in-home needs assessment, the Commission will designate someone to perform the assessment. In the event that the need for attendant care is determined by the in-home needs assessment to have changed, the parties may agree on the necessary hours or request further decision from the Commission on this issue.
6. Defendants shall pay the costs, including an expert witness fee of $500.00 to Dr. William L. Bockenek and $325.00 to Dr. Cynthia Wilhelm, if not already paid by prior order.
This 18 day of November 2005.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
 S/ _______________________ PAMELA T. YOUNG COMMISSIONER